ABE SPAIN *vs.* THOMAS ROSSITER.

1. EVIDENCE—EMPLOYEE'S TESTIMONY THAT SHE HAD NEVER WRITTEN SIMILAR ADVERTISING CONTRACTS FOR LESS THAN 12 MONTHS HELD MATERIAL ON ISSUE WHETHER CONTRACT WAS FOR ONE MONTH.

In an action involving the question of whether an advertising contract purporting to run for 12 months had been intended as a one-month contract, advertiser's employee's testimony that it was her invariable custom to write such contracts for 12 months, that she had never written similar contracts for less than 12 months, and had no power to do so, *held* material and relevant.

2. WITNESSES—WITNESS WHO TESTIFIED AS TO BAD REPUTATION OF OPPOSING WITNESS FOR VERACITY COULD STATE THAT HE WOULD NOT BELIEVE HIM ON OATH.

A witness, after testifying that he knows the general reputation of an, oppos ng witness in the community in which he lives for truth and veracity and aifter testifying that such reputation is bad, can be asked whether, from such reputation, he would believe the attacked witness.

(*February* 16, 1923.)

RODNEY, J., sitting.

*William Prickett* for plaintiff.

*Robert G. Harman* and *J. Rankin Davis* for defendant.

Superior Court for New Castle County, January Term, 1923. SCI. FA. SUR MECHANIC'S LIEN, No. 101, January Term, 1921.

At the trial Mary Rossiter and Thomas Rossiter appeared as witnesses for the defendant. Subsequently the plaintiff called several witnesses who testified that the reputation of Mary Rossiter and Thomas Rossiter in the communities in which they lived were bad as to truth and veracity. In response to further questions these witnesses testified that upon such reputation they would not believe Mary Rossiter or Thomas Rossiter upon their oaths. This testimony was admitted over the objection of the defendant.

At the trial Mary Rossiter also testified with reference to an interview with Spain, the plaintiff, at which the advertising contracts were signed, substantially as follows:

"And our contracts all call for 12 months and it is stipulated in the contracts and we went over all that in the first place—for 12 months' advertising, for I wouldn't be allowed to talk for other than 12 months. * * * Our contracts all call for 12 months, except for the political contracts for the candidates. * * * Otherwise the contracts call for a year."

Over the objection of the defendant that the matter was immaterial and irrelevant, cross-examination was permitted, with the result that the witness stated that no similar contract to the one in the present case had been written for less than one year. Subsequently, the plaintiff introduced evidence to discredit this witness by having a tendency to show that contracts had been written for less than one year, to wit, one month, on more than one occasion.

The jury rendered a verdict for the plaintiff.

The defendant filed a motion for a new trial, alleging, in substance, that the Court erred:

1st. Because it permitted the witness Mary Rossiter to be cross-examined and contradicted on a collateral and irrelevant matter.

2nd.   Because it permitted the plaintiff's attorney after attacking the defendant's witnesses for truth and veracity to further ask the impeaching witness whether from such knowledge the said impeaching witness would believe the persons named, viz., the Rossiters, upon their oath.

RODNEY, J., delivering the opinion of the court:

[1]   Miss Rossiter's testimony was introduced to show that she knew that the contract with Spain was for 12 months instead of one month because it was her invariable custom to write such contracts for 12 months; that she had never written similar contracts for less than 12 months and had no power so to do.   In my opinion this was  material and relevant where the sole issue was as to whether a contract reading for 12 months was fraudulent, it being claimed to have been intended for a one month contract. Being material and relevant cross-examination and contradiction were permissible.

[2]   The second exception presents an interesting question not heretofore raised in this state, namely, whether a witness, after testifying that he knows the general reputation of an opposing witness in the community in which he lives for truth and veracity and after further testifying that such reputation is bad, can be asked whether from such reputation he would believe the attacked witness on oath.   It is argued with much plausibility that, while proof of reputation is proper and admissible, the admission of the question as to whether the attacking witness would believe the first witness on oath substitutes the opinion and judgment of the attacking witness for that of the jury and opens the floodgates of personal animosity and feeling.

The text-books, with the exception of Greenleaf, almost all hold that the question as put in the present case is a proper one, although the reasons assigned therefor are most unsatisfactory.   In England the question was undoubtedly admissible and all authorities trace the origin of the conflict to the statement in 1 *Greenleaf*, § 461, to the effect that the American authorities did not favor the English rule.   The reported cases in United States

are overwhelmingly in favor of the admissibility of the question and from them can be culled the reason therefor. The purpose of any inquiry as to the reputation of a witness for veracity is to enable the jury to determine whether the witness is to be believed in the capacity in which he appears before the jury, viz., "on oath." Evidence of his reputation would be irrelevant for any other purpose. To say that his reputation for veracity is bad gives but imperfect information. Bad is a relative term and a reputation which would not affect a witness while under oath could have no proper influence. The object of the question is to enable the jury to ascertain the true character of his reputation for truth as the impeaching witness understands it, and thereby enable them to determine the extent to which it ought to discredit the witness. From simply a statement that a reputation for veracity is bad the jury may not be able to determine whether a witness can be believed on oath. It is the same sort of difficulty that arises with reference to velocities, distances and the like, and there the opinion of the witness is uniformly given.

The authorities from approximately 30 jurisdictions approving the admissibility of the present question are collected in 28 *R. C. L.* 628; 40 *Cyc.* 2632; title "witnesses" in *Cent. Dig.*, § 1158, and *First* and *Second Decemnial Digest*, § 357; 5 *Jones on Evidence*, § 862, *p.* 268.

In two states it is held that the proper inquiry is not whether the impeaching witness would believe the other under oath, but whether, in view of his reputation, he is worthy of belief under oath. *Blue v. Kibby*, 1 *T. B. Mon. (Ky.)* 195, 15 *Am. Dec.* 95; *Holbert v. State*, 9 *Tex. App.* 219, 35 *Am. Rep.* 738.

This refined distinction, however, is not generally recognized, and in *Hillis v. Wylie*, 26 *Ohio St.* 574, the questions are held to be the same in effect and are admissible.

Such, then, is the general law and such has ever been the uniform practice in Delaware, and the only reason for prolonging this opinion is because, as counsel says, no objection has hitherto been made to such questions.

In *Robinson v. Burton*, 5 *Harr*. 335, 339, the court in speaking of proof of want of veracity says:

"That rests on general report, and cannot be proved by particulars, and it is followed by the witness' own judgment as to the effect of such general reputation."

This, I apprehend, means that a witness can state whether, from the general reputation, he would believe an attacked witness on oath. In *State v. Pucca*, 4 *Penn*. 71, 55 *Atl*. 831, the precise question here involved was asked and answered, and in *State v. Hamilton*, 6 *Penn*. 433, 67 *Atl*. 836, not only was this same question asked and answered, but the court in *State v. Stewart*, 6 *Penn*. 439, 67 *Atl*. 788, says:

"In the matter of introducing character evidence there is a well established rule, and the examination of this witness has been conducted in conformity with that rule."

This single point was involved in *Held v. U. S.*, 260 *Fed*. 932, 171 *C. C. A*. 574. There the Circuit Court of Appeals after proper proof of knowledge of a bad reputation of a former witness for veracity would not allow the attacking witness to testify that he would not believe the assailed witness on oath—precisely the principle involved in this case. The Circuit Court of Appeals held the refusal to allow the question was prejudicial error and awarded a new trial.

For the reasons stated the motion for a new trial is refused.